UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:07-CR-244-SDJ |
| | § | |
| BRIAN KEITH HARPER (4) | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendant Brian Keith Harper's Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), (Dkt. #255), Supplement to the Motion for a Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1), (Dkt. #265), Renewed Compassionate Release Pursuant to 3582, (Dkt. #269), and Renewed Compassionate Release Pursuant to 3582, (Dkt. #270). Harper's motions are substantively identical, relating to his request for compassionate release. After full consideration, Harper's motions are **DENIED**.

**I. BACKGROUND**

On November 17, 2008, a jury found Brian Harper guilty of conspiracy to possess with intent to distribute five or more kilograms of cocaine in violation of 21 U.S.C. § 846. (Dkt. #182). As part of this conspiracy, Harper was "involved in an international drug trafficking operation between Mexico and the United States involving multiple kilograms of cocaine." (Dkt. #205 ¶ 16). He was responsible for about 295 kilograms of cocaine, from which he profited "at least $4,440,000 in drug proceeds from 2005 and 2007." (Dkt. #205 ¶¶ 16–17). Harper was considered "a leader" of the operation because he was "responsible for organizing the drug

1

transactions . . . and recruited another codefendant to transport the cocaine and drug proceeds[.]" (Dkt. #205 ¶ 25).

On February 13, 2009, Harper was sentenced to a 360-month term of imprisonment with ten years of supervised release. (Dkt. #214). In May 2016, this Court ordered the reduction of Harper's sentence to 292 months based on a subsequent change to the sentencing guidelines. (Dkt. #251).

Harper now seeks compassionate release, citing his medical circumstances, family circumstances, unusually long sentence, alleged illegality of his supervised release term, and his rehabilitation in support. *E.g.*, (Dkt. #255 at 2). Taken together, Harper believes that these reasons show why the Court should reduce his sentence, presumably to time served, and order him released from prison. At this time, Harper has served about two-thirds of his sentence.

## LEGAL STANDARDS

### A. Jurisdiction over Sentence-Reduction Motions

Under the "rule of finality," "federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed." *Freeman v. United States*, 564 U.S. 522, 526, 131 S.Ct. 2685, 180 L.Ed.2d 519 (2011) (cleaned up). That is so because a judgment of conviction imposing a sentence of imprisonment "constitutes a final judgment," which may be modified in only "limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824, 130 S.Ct. 2683, 177 L.Ed.2d 271 (2010). Indeed, the Fifth Circuit has explained that "[a]bsent jurisdiction conferred by statute, district courts lack power to consider [post-judgment] claims."

*United States v. Varner*, 948 F.3d 250, 253 (5th Cir. 2020) (quoting *Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)); *see also Eberhart v. United States*, 546 U.S. 12, 17, 126 S.Ct. 403, 163 L.Ed.2d 14 (2005) (per curiam) (a "basic principle of judicial process" is that "once a final [criminal] judgment is issued and the court of appeals considers a case, a district court has no power to act on it further").

The "limited circumstances" in which a defendant may invoke the district court's[1] jurisdiction are through (1) compassionate-release motions;[2] (2) motions for sentence reduction based on a change in the sentencing guidelines;[3] (3) Rule 35(a) motions to correct clear error within fourteen days of sentencing;[4] (4) Rule 35(b) motions for sentence reduction based on substantial assistance;[5] (5) Rule 36 motions to correct clerical errors;[6] (6) habeas motions;[7] or (7) any other motion "expressly permitted by statute."[8] *Varner,* 948 F.3d at 253–54. That's it. If a Defendant seeks

---

[1] A defendant may invoke the jurisdiction of the courts of appeals through direct appeal of their term of imprisonment under 18 U.S.C. § 3742.

[2] 18 U.S.C. § 3582(c)(1)(A).

[3] 18 U.S.C. § 3582(c)(2).

[4] 18 U.S.C. § 3582(c)(1)(B); *see also* FED. R. CRIM. P. 35(a).

[5] *Id.*; *see also* FED. R. CRIM. P. 35(b).

[6] FED. R. CRIM. P. 36.

[7] 28 U.S.C. §§ 2254–2255.

[8] 18 U.S.C. § 3582(c)(1)(B).

3

other relief, they should specifically identify where that relief is expressly permitted by statute or rule.[9]

**B. Motions for Compassionate Release**

Compassionate-release motions are governed by 18 U.S.C. § 3582(c)(1)(A)(i). They can be filed by either the Director of the Bureau of Prisons ("BOP") or the defendant. Under this section, the Court may "reduce the term of imprisonment" and "impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment[.]" *Id.* § 3582(c)(1)(A)(i). The standard for granting relief is exacting. The court must find that (1) "'extraordinary and compelling reasons' justify a sentence reduction"; (2) such a reduction "must be consistent with applicable policy statements issued by the Sentencing Commission"; and (3) "early release would be consistent with the sentencing factors in § 3553(a)." *United States v. Clark*, No. 24-10020, 2024 WL 4930383, at *1 (5th Cir. Dec. 2, 2024).

So what constitute "extraordinary and compelling reasons"? Congress chose not to elaborate further. Instead, it delegated the authority to do so to the Sentencing Commission. *See* 28 U.S.C. § 994(t) (directing the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for

---

[9] For example, Federal Rule of Civil Procedure 60(b)(6) authorizes a court to "relieve a party or its legal representative from a final judgment, order, or proceeding for . . . any other reason that justifies relief." To prevail on a Rule 60(b)(6) motion in a federal habeas proceeding, a movant must establish that (1) the motion was "made within a reasonable time," and (2) "'extraordinary circumstances' [exist to] justify[] the reopening of a final judgment." *Gonzalez v. Crosby*, 545 U.S. 524, 535, 125 S.Ct. 2641, 162 L.Ed.2d 480 (2005) (quoting *Ackermann v. United States*, 340 U.S. 193, 199, 71 S.Ct. 209, 95 L.Ed. 207 (1950)). Extraordinary circumstances "will rarely occur in the habeas context." *Id.*

sentence reduction, including the criteria to be applied and a list of specific examples"). In so doing, Congress "provided just one restriction: 'Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.'" *United States v. Shkambi*, 993 F.3d 388, 391 (5th Cir. 2021) (quoting 28 U.S.C. § 994(t)).

Under this authority, the Sentencing Commission promulgated U.S.S.G. § 1B1.13. As it stands now, there are six "extraordinary and compelling reasons" that could warrant sentence reduction: (1) the defendant's medical circumstances; (2) the defendant's age; (3) the defendant's family circumstances; (4) whether the defendant is a victim of abuse; (5) other reasons that are "similar in gravity" to reasons one through four; and (6) whether the defendant has an unusually long sentence. U.S.S.G. § 1B1.13(b)(1)–(6). This section binds district courts because Section 3582 requires sentence reductions to be "consistent with applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. Garcia*, 655 F.3d 426, 435 (5th Cir. 2011) (finding that Congress intended the Sentencing Commission's policy statements "to be binding in § 3582(c) proceedings"). And the 2023 amendments[10] made clear that U.S.S.G. § 1B1.13 applies to motions filed by either "the Director of the [BOP] or the defendant."[11]

---

[10] Amendments to the Sent'g Guidelines (U.S. Sent'g Comm'n Nov. 1, 2023).

[11] Before the 2023 amendments to the Sentencing Guidelines, U.S.S.G. § 1B1.13(a) was limited to motions "of the Director of the [BOP]." The Fifth Circuit, among many others, interpreted this omission to suggest that U.S.S.G. § 1B1.13 did not apply to compassionate-release motions filed by defendants. *United States v. Shkambi*, 993 F.3d 388, 392–93 (5th Cir. 2021); *see also United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam); *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020); *United States v.*

U.S.S.G. § 1B1.13(a); *see also United States v. Jean*, 108 F.4th 275, 290 (5th Cir. 2024) (noting that "district courts are now guided by the November 1, 2023 Amendments in future cases"), *abrogated on other grounds by United States v. Austin*, No. 24-30039, 2025 WL 78706, at *3 (5th Cir. Jan. 13, 2025).

But the analysis doesn't end there. Even if the defendant shows extraordinary and compelling reasons for granting relief, several other hurdles remain. For example, the court must find that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2). The factors under Section 3142(g) align with the sentencing factors under 18 U.S.C. § 3553(a),[12] which must also be considered by the court:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a). The district court has broad discretion in considering these factors. As the Supreme Court has explained, "the 'sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case[.]'"

---

*Brooker*, 976 F.3d 228, 230 (2d Cir. 2020). The amended guidelines allow for motions "of the Director of the [BOP] *or the defendant*," which clarified this previous confusion.

[12] For brevity, the Court includes the language of only 18 U.S.C. § 3553(a), which is substantively identical to 18 U.S.C. § 3142(g).

*United States v. Rollins*, 53 F.4th 353, 359 (5th Cir. 2022) (quoting *Gall v. United States*, 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007)). Consistent with the broad discretion granted district courts, the Fifth Circuit has "regularly affirmed the denial of a compassionate-release motion … where the district court's weighing of the Section 3553(a) factors can independently support its judgment." *Id.* at 358 (citation omitted). In short, "compassionate release is discretionary, not mandatory, and could be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).

Based on his arguments, Harper relies on his medical conditions, family circumstances, and unusually long sentence as extraordinary and compelling reasons for his release.

### i. Defendant's medical circumstances (U.S.S.G. § 1B1.13(b)(1))

The Sentencing Commission has enumerated four separate medical circumstances to consider in evaluating a compassionate-release request. U.S.S.G. § 1B1.13(b)(1)(A)–(D).

First, whether the Defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory)." *Id.* § 1B1.13(b)(1)(A). Although a life-expectancy prognosis is not required, the provided examples make clear how serious the illness must be: "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* Fifth Circuit precedent is in accord. *See, e.g.*, *United States v. McMaryion,* No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) (per curiam) ("We have said that a

7

late-stage, terminal prognosis can constitute an extraordinary and compelling basis for a § 3582(c)(1) motion."). Generic conditions like hypertension or high cholesterol are insufficient. *See, e.g.*, *United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021) (finding neither hypertension nor high cholesterol to be terminal conditions); *United States v. Koons*, 455 F.Supp.3d 285, 292–93 (W.D. La. 2020) (similar, but for high cholesterol, hypertension, and acid reflux).

Second, whether the defendant is "(i) suffering from a serious physical or medical condition, (ii) suffering from a serious functional or cognitive impairment, or (iii) experiencing deteriorating physical or mental health because of the aging process." U.S.S.G. § 1B1.13(b)(1)(B). This condition must be so severe that it "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* When the defendant's conditions are "'managed effectively by medication' and do not 'substantially diminish the ability of the defendant to provide self-care,'" the defendant's medical condition is not an "extraordinary and compelling reason[] warranting compassionate release[.]" *United States v. Love*, 853 F.App'x 986, 987 (5th Cir. 2021) (quotations omitted).

Third, whether the Defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). This subcategory focuses on the lack of resources and medical care available in some correctional facilities. Courts have rejected as

8

insufficient general complaints about long-term issues without medical proof of the condition or how it is deteriorating. *See, e.g.*, *United States v. Ani*, No. 21-00147, 2024 WL 50775, at *4 (D. Haw. Jan. 4, 2024) ("BOP is providing him with medical care, such as medication. There is no evidence that his medical conditions are deteriorating; that his medical conditions require long-term or specialized medical care that is not being provided and without which he is at risk of serious deterioration in health or death; or that his ability to care for himself has been seriously diminished."); *United States v. Dessaure-Outlaw*, No. CR 122-023, 2024 WL 83327, at *2 (S.D. Ga. Jan. 8, 2024) (finding general complaints about surgery complication and diabetes insufficient).

Fourth, whether the defendant is in a facility that is "at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority." U.S.S.G. § 1B1.13(b)(1)(D)(i). In addition, the defendant's "personal health risk factors and custodial status," must put them "at increased risk of suffering severe medical complications or death[.]" *Id.* § 1B1.13(b)(1)(D)(ii). The facility must also be unable to "adequately mitigate[]" the defendant's increased risk "in a timely manner." *Id.* § 1B1.13(b)(1)(D)(iii).

Courts have consistently denied motions related to the COVID-19 pandemic under this section.[13] In fact, the Fifth Circuit has "repeatedly denied relief in cases

---

[13] *See, e.g.*, *United States v. Blair*, No. 5:19-CR-50058, 2023 WL 8223470, at *3 (W.D. Ark. Nov. 6, 2023) (finding the mere risk of COVID-19 infection was too speculative to serve as an extraordinary and compelling medical circumstance); *United States v. Williams*, No. GLR-97-355, 2023 WL 8019023, at *4 (D. M.D. Nov. 20, 2023) ("Hypertension and high BMI

9

where prisoners sought compassionate release due to fear of communicable disease, even when those prisoners were in poor health." *McMaryion*, 2023 WL 4118015, at *2 (citing *Thompson*, 984 F.3d at 432–34 (5th Cir. 2021) (denying relief to a hypertensive stroke survivor concerned by COVID-19); also citing *United States v. Rodriguez*, 27 F.4th 1097, 1098–1100 (5th Cir. 2022) (denying relief where COVID-19-fearing movant suffered from heart failure)). Indeed, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]" *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also Koons,* 455 F.Supp.3d at 290) ("[A] prisoner cannot satisfy his burden of proof by simply citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP.").

Further, the increased risk from an outbreak or emergency must exist at the time relief would be granted. The Sentencing Commission drafted this section using words that convey the necessary, continuous nature of the risk—"at imminent risk of being affected," "ongoing outbreak," "ongoing public health emergency," "increased risk of suffering." U.S.S.G. § 1B1.13(b)(1)(D). As applied to COVID-19, this is no longer the case: Both international and domestic health authorities, including the World Health Organization,[14] the United States Centers for Disease Control and

---

were not sufficient to warrant a prisoner's relief when the BOP facility's COVID-19 numbers were low, and the inmate did not show that he would not receive appropriate treatment if he were to contract the virus.").

[14] *Statement on the Fifteenth Meeting of the IHR (2005) Emergency Committee on the COVID-19 Pandemic*, WORLD HEALTH ORG. (May 5, 2023), https://www.who.int/news/item/05-05-2023-statement-on-the-fifteenth-meeting-of-the-international-health-regulations-(20

10

Prevention,[15] and the U.S. Federal Government,[16] have made clear that the COVID-19 pandemic has ended.[17] Thus, the COVID-19 pandemic no longer constitutes an "extraordinary and compelling reason" for compassionate release.

### ii. Defendant's family circumstances (U.S.S.G. § 1B1.13(b)(3))

The Sentencing Commission enumerates four potential reasons for a defendant's family circumstances to constitute an extraordinary and compelling reason for release:

> (A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.
>
> (B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.
>
> (D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, "*immediate family member*"

---

05)-emergency-committee-regarding-the-coronavirus-disease-(covid-19)-pandemic [https://perma.cc/MR64-X7UV].

[15] *End of the Federal COVID-19 Public Health Emergency (PHE) Declaration*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 5, 2023), https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html#:~:text=The%20federal%20COVID-19%20PHE,share%20certain%20data%20will%20change [https://perma.cc/3S43-2VNT].

[16] *See* National Emergencies Act, Pub. L. 118-3, April 10, 2023, 137 Stat 6.

[17] *See also United States v. Ford*, No. 1:16-CR-19, 2023 WL 3477168, at *5 (N.D. Ind. May 15, 2023) (noting that "on May 11, 2023, the federal government ended the COVID-19 Public Health Emergency based on widespread prevention and control measures like vaccination." (quotations omitted)).

11

refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S.S.G. § 1B1.13(b)(3)(A)–(D).

Conclusory assertions that a defendant must now serve as the primary caretaker for a family member are insufficient. *See, e.g.*, *United States v. Newman*, No. CR 122-031, 2024 WL 812041, at *2 (S.D. Ga. Feb. 27, 2024) (finding unsupported assertions that defendant's wife was disabled and that his father required caretaking were "conclusory statements" that were "insufficient to carry his burden of persuasion"). Rather, courts require specific evidence of the defendant's need to serve as a primary caretaker.

For example, a defendant must prove with medical support that a family member is incapacitated. *See United States v. Zermeno*, No. 1:16-CR-79(1), 2024 WL 4043445, at *4 (E.D. Tex. Sept. 3, 2024) (collecting cases); *United States v. Romano*, 707 F.Supp.3d 233, 237–38 (E.D.N.Y. 2023) (finding that "[w]ithout medical evidence" of the "father's incapacitation and medical evidence detailing [defendant's] mother's inability to provide his father the necessary assistance, the Court cannot conclude that [the mother] would be an inadequate caregiver"). Statements that a family member is elderly and needs care are insufficient. *Id*. The defendant must also demonstrate why they are the only available caregiver for that family member. *United States v. Lopez,* No. 23-50404, 2024 WL 244935, at *1 (5th Cir. Jan. 23, 2024) (noting that the defendant "failed to explain why his other siblings could not care for his parents"). And there must be a reason for the change in that family member's

12

caretaker status. *Id.* (noting the defendant's failure to "allege the death or incapacitation of any current caretaker").

When the caretaking role relates to minors like children, additional requirements apply. For instance, the defendant must show that they would likely gain custody of the child if released. *See, e.g.*, *Zermeno*, 2024 WL 4043445, at *5 (collecting cases). In such a situation, the court should evaluate whether "release of the inmate to care for the inmate's child is the best interest of the child." U.S. Dep't of Just., Fed. Bureau of Prisons, Program Statement 5050.50 (Jan. 17, 2019)).

### iii. Unusually long sentences (U.S.S.G. § 1B1.13(b)(6))

A defendant must meet three requirements under this section. First, the defendant must be serving an unusually long sentence. U.S.S.G. § 1B1.13(b)(6). Second, they must have served at least ten years of that sentence. *Id.* Third, there must have been a change in law that "produce[s] a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." *Id.* This section explicitly excludes non-retroactive changes "to the Guidelines Manual." *Id.* And Fifth Circuit precedent precludes considering non-retroactive changes in *any* law. *United States v. Austin*, No. 24-30039, 2025 WL 78706, at *3 (5th Cir. Jan. 13, 2024) ("A non-retroactive change in the law cannot constitute an extraordinary and compelling reason justifying sentence reduction under § 3582(c)(1)."). Thus, in this circuit, non-retroactive changes are irrelevant.

13

**C. Exhaustion Requirement Under 18 U.S.C. § 3582(c)(1)(A)**

Section 3582(c)(1)(A) imposes exhaustion requirements for compassionate-release requests from a defendant: they must "fully exhaust[] all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" Although this requirement is mandatory, the Fifth Circuit has treated it as "a nonjurisdictional claim-processing rule." *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020), *cert. denied*, 141 S.Ct. 920 (2020). And "mandatory but nonjurisdictional procedural filing requirements may be waived." *United States v. McLean*, Nos. 21-40015, 21-40017, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022). Thus, if the Government fails to "invoke § 3582(c)(1)(A)'s exhaustion requirement as a basis for denying relief," that argument is deemed waived. *Id.*

### III. DISCUSSION

**A. Jurisdiction**

The Court first addresses jurisdiction. A motion for compassionate release is an improper vehicle for Harper to contest the alleged illegality of his supervised-release term, as well as how the law was applied to the facts of his case for sentencing. Instead, these issues must be raised on direct appeal under 18 U.S.C. § 3742. Harper appealed his sentence. *See United States v. Harper*, 369 F.App'x 556 (5th Cir. 2010). And on appeal, the Fifth Circuit affirmed this Court's judgment—including Harper's supervised-release term. *Id.* at 569. Because Harper's sentence was affirmed on

appeal, and because the Supreme Court denied his writ of certiorari, *Harper v. United States*, 562 U.S. 892, 131 S.Ct. 274, 178 L.Ed.2d 140 (2010), Harper's time to raise such challenges is over. Because the Court lacks jurisdiction to consider these arguments, they are dismissed.

**B. Exhaustion**

Next, the Court addresses exhaustion. In this circuit, the Government may waive its right to contest exhaustion if it fails to raise this argument in response. *McLean*, 2022 WL 44618, at *1. Here, the Government concedes that Harper exhausted "all of his claims except for his claim that he is the only caregiver available to care for his mother." (Dkt. #260 at 3). But Harper has since re-asserted his family-circumstances argument. *See, e.g.*, (Dkt. #265 at 2). The Government never responded to this supplemental filing. The Court therefore finds that any administrative-exhaustion argument that the Government may have had against Harper's claims is deemed waived. The Court finds that Harper has exhausted his remedies.

**C. Reasons for Compassionate Release**

Turning to the remaining substance of Harper's motion, he asserts three reasons for granting his request for compassionate release: his medical circumstances (U.S.S.G. § 1B1.13(b)(1)(D)(i)), family circumstances (U.S.S.G. § 1B1.13(b)(3)), and his unusually long sentence (U.S.S.G. § 1B1.13(b)(6)). The Court takes each in turn, starting with Harper's medical circumstances.

Harper points to three primary medical conditions that he believes, taken together, constitute an extraordinary and compelling reason for his release: (1)

15

lingering effects from COVID-19, (2) hypertension, and (3) chronic ear infections. (Dkt. #255 at 7–9). The Court disagrees. To begin, the Fifth Circuit has repeatedly denied similar motions for compassionate release citing more serious health concerns and the COVID-19 pandemic. *See, e.g.*, *Thompson*, 984 F.3d at 432–34 (denying relief to a hypertensive stroke survivor concerned with COVID-19); *Rodriguez*, 27 F.4th at 1098–1100 (denying relief where COVID-19-fearing movant suffered from heart failure). And as the Government notes, Harper is medically stable and is being provided the care he needs given his current conditions: "Harper is classified as Care Level 1 'HEALTHY OR SIMPLE CHRONIC CARE.' Care Level 1 inmates are less than 70 years of age and are generally healthy. They may have limited medical needs that can be easily managed by clinician evaluations every 6–12 months." (Dkt. #260 at 4). Harper does not contest the accuracy of the Government's care-level classification. Nor does he provide any proof that his health has deteriorated so much that he can no longer provide care for himself. As a result, Harper's medical conditions are insufficient to constitute an extraordinary and compelling reason for release. *See, e.g., Ani*, 2024 WL 50775, at *4 ("BOP is providing him with medical care, such as medication. There is no evidence that his medical conditions are deteriorating; that his medical conditions require long-term or specialized medical care that is not being provided and without which he is at risk of serious deterioration in health or death; or that his ability to care for himself has been seriously diminished.").

And even if Harper's conditions were much worse and posed a greater risk, the COVID-19 pandemic has ended and no longer constitutes an extraordinary and compelling reason for compassionate release. *See supra* notes 14–17 and accompanying text.

As to his family circumstances, Harper suggests that he needs to serve as the primary caregiver for his mother since she "is almost [b]lind, has [lupus,] and is in desperate need of her son a caregiver to assist her in daily living." (Dkt. #255 at 2). Harper provides no support for this claim other than his mother's lupus diagnosis. Nor does he provide proof that his mother is incapacitated. *Zermeno*, 2024 WL 4043445, at *4 (noting that "conclusory statements do not allow the court to make the necessary factual findings concerning the incapacity of" an elderly family member). Harper also fails to show why only he can provide the requisite care for his mother. *Lopez*, 2024 WL 244935, at *1 (noting that defendant "failed to explain why his other siblings could not care for his parent[]"). As his Presentence Investigation Report notes, Harper has a sibling—Philip Pulliman. (Dkt. #205 ¶ 40). Therefore, Harper's family circumstances are also insufficient to constitute an extraordinary and compelling reason for release.

Harper's argument as to his unusually long sentence fails too, for he has not identified any relevant change in the law that "produce[s] a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." U.S.S.G. § 1B1.13(b)(6). In fact, his amended sentence already takes

into account changes to the sentencing guidelines. *See, e.g.*, (Dkt. #251) (Reducing Harper's sentence from 360 months to 292 months).

Finally, because the Court rejected Harper's other reasons, and because "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for release, *Shkambi*, 993 F.3d at 391, this argument fails too.

Setting the sentencing guidelines aside, the Court independently finds that the sentencing factors under 18 U.S.C. § 3553(a) support denying Harper's motion. *Rollins*, 53 F.4th at 359. Harper was responsible for nearly 300 kilograms of cocaine, as well as recruiting others to join in an international drug conspiracy. (Dkt. #205 ¶¶ 16–17, 25). He profited over four million dollars from his role in the offense. (Dkt. #205 ¶ 16). And because of his leadership role in the conspiracy, Harper's initial recommended sentence was 360 months to life in prison. (Dkt. #205 ¶ 56). Indeed, Harper's offense mandates a twenty-year-minimum sentence, which reflects the seriousness of the crime and deters future criminal conduct. (Dkt. #205 ¶ 55). Harper asks the Court to release him when he still has a significant portion of his sentence remaining. Granting Harper's request would not reflect the seriousness of his offense, promote respect for the law, or provide just punishment for his offense. Nor would it adequately deter future criminal conduct or protect the public.

On top of the conviction for which he is currently serving time, Harper has a troubling criminal history. That history includes several drug possession charges, (Dkt. #205 ¶¶ 31–33), as well as a charge for aggravated assault in which Harper

18

rammed his car into a police vehicle when the police "attempted to effect a traffic stop for speeding . . . ." (Dkt. #205 ¶ 35). These convictions, on top of his current one, show why Harper continues to present a substantial danger to the public. Put another way, the punishment fits the crime.

To summarize, because Harper has failed to show that there are extraordinary and compelling reasons to reduce his sentence, his motion must be denied. Even if Harper had made this showing, the Court would still find that his motion must be denied "after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *Chambliss*, 948 F.3d at 693.

### IV. CONCLUSION

Defendants seeking compassionate release must show that (1) extraordinary and compelling reasons warrant a sentence reduction; (2) a reduction would be consistent with the applicable policy statements of the Sentencing Commission; and (3) a sentence reduction is warranted after consideration of the sentencing factors in 18 U.S.C. § 3553(a). Defendant Brian Harper has failed to meet his burden for each requirement and has otherwise raised issues the court has no authority to consider.

Therefore, as to Harper's complaints regarding the alleged illegality of his supervised-release term, as well as how the law was applied to the facts of his case for sentencing, such complaints are **DISMISSED for want of jurisdiction**. And as to the remainder of Harper's Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), (Dkt. #255), Supplement to the Motion for a Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1), (Dkt. #265), Pro Se Renewed Motion to

Reduce Sentence, (Dkt. #269), and Motion to Reduce Sentence, (Dkt. #270), the motions are otherwise **DENIED**.

**So ORDERED and SIGNED this 25th day of August, 2025.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE